1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARMANDO TORRES MENDEZ, | ) | 1:08cv01784 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Armando Torres Mendez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1]The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 3 and 10).

1

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial applications for DIB and SSI on August 23, 2006, alleging disability since January 12, 1996, due to hypertension and diabetes mellitus with neuropathy.  AR 94-98, 99-101, 120.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 45, 71, 74-78, 80-84.  On March 17, 2008, ALJ Bert Hoffman held a hearing.  AR 24-39.  ALJ Hoffman denied benefits on May 29, 2008.  AR 10-22.  The Appeals Council denied Plaintiff's request for review on September 22, 2008.  AR 3-8.

Hearing Testimony

ALJ Hoffman held a hearing on March 17, 2008, in Fresno, California.  Plaintiff appeared with his attorney, Robert Christenson.  AR 26.  A Spanish interpreter also was present.  AR 26.

Plaintiff testified that he was 54 years old at the time of the hearing.  Plaintiff completed sixth grade in Colima, Mexico.  He cannot write in English, but understands some English.  AR 27.

Plaintiff worked as a tractor driver from 1971 to 1979.  He last worked in 2006.  He picked grapes for two and a half to three months.  He did not work in 2004 or in 2005.  AR 28. His children helped support him.  They lost the house.  AR 29.  Plaintiff did not do farm labor work, just tractor work.  As a tractor driver, his duties were to plow the soil.  At one time, he used to help his father sell fruit.  His father died four or five years before the hearing.  AR 29. He helped his dad selling fruit in 1992 for seven or eight years.  AR 30.  When his dad passed away, he quit doing it.  AR 30.

Plaintiff did not work in March 2007.  He did not recall why a physician's assistant gave him a note restricting his lifting to no more than 30 pounds in March 2007, but he cannot pick up "anything at all" with his right hand.  AR 29-30.

Plaintiff testified that he has a lot of back pain, pain in his knees and blood pressure highs and lows, which are keeping him from working.  Plaintiff's doctor told him that he had to do

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

more tests to see what was wrong with his hand.  The doctor said his hand was "in bad shape – in very bad shape."  AR 30.

Plaintiff has diabetes.  AR 30.  He is taking insulin in the morning and in the evening.  He also is taking medication for pain and for diabetes.  AR 31.  He is starting to have problems with his vision from the diabetes.  He also does not feel like doing anything for seven or eight days out of the month.  His left leg and foot get numb, which affects his ability to stand and walk.  If he walks "a little bit," the soles of his feet feel like they are on fire.  AR 31.

Plaintiff had a brace on his right hand, which the doctor gave to him on March 4.  The doctor was going to do more studies of Plaintiff's back and knees, but Plaintiff did not know what studies.  AR 31-32.

At home, Plaintiff can lift 15 pounds for about 10 minutes and then the pain is unbearable.  The pain is located in the spine and at the waist.  AR 32.  Plaintiff's hand has given him problems for about a month and a half.  AR 32.

Plaintiff can stand 25 to 30 minutes and he gets "a lot of pain."  AR 32.  In an eight hour day, he can stand for a total of three hours or less.  AR 32-33.  Plaintiff also has problems sitting. He can sit about 15 minutes before he needs to stand up and walk around.  He can walk about a quarter of a mile, but has to stop two or three times.  AR 33.  He has to take four rest breaks for 10 to 15 minutes each in an eight hour day.  AR 33-34.  During the rest breaks, he lies down.  He needs the rest breaks when he cuts the lawn or when he helps his wife around the house.  AR 34. He has some days that he does not function very well.  Seven or eight days of the month he has no strength and does not feel like doing anything.  AR 34.  He does not have side effects from taking medication.  AR 34.

Plaintiff testified that on a normal day he would feel like going out.  He helps his wife with yard work.  He cuts the lawn and puts the grass clippings into a trash can.  He also helps his wife clean the kitchen.  AR 34-35.  He "hardly ever" goes out because his wife also is ill.  She fell and they had to do surgery on her right shoulder in May of the previous year.  AR 35.

Plaintiff last went to Mexico eight or nine years before the hearing.  He does not drive. His wife has a license to drive in Mexico.  He has a license to drive here.  AR 35-36.  He stopped

driving because he gets dizzy.  He has had to call his wife to come get him when he is driving because of his diabetes and not feeling good.  It causes a lot of sweating.  He last drove to Clarabella about 10 days prior to the hearing.  His wife cannot drive now.  AR 36.

Plaintiff testified that he is having problems dressing himself.  He needs help to eat.  His wife has to cut up his food so that he can eat because of his hand.  AR 36.  A month and half before the hearing, he could cut his meat.  AR 37.  During the hearing, Plaintiff stood up because his back hurt.  AR 37.  Plaintiff wanted the ALJ to know that he feels really bad and would like to go to work.  Once they see his record they do not want to hire him because of the problems with his hand and his age.  AR 37.

"Dr. Colper" is Plaintiff's doctor.  Plaintiff has been seeing him once every month or two for a little over a year at Family Healthcare Network.  AR 37.

Medical Record

On December 30, 2003, Plaintiff received treatment at Family Healthcare Network.  He was diagnosed with uncontrolled diabetes mellitus Type II and stage 1 hypertension.  AR 281.  Plaintiff was temporarily prescribed insulin and started on the Patience Assistance Program to receive Glucophage and Avandia.  AR 280.

On January 7, 2004, Plaintiff saw Matthew Kosel, PA-C, at Family Healthcare Network, for a follow-up appointment.  Plaintiff had started insulin and had been checking his blood sugars daily.  PA Kosel assessed Plaintiff with diabetes mellitus type II, hypertriglyceridemia and microalbinuria.  He was to increase his insulin and continue blood sugar monitoring.  AR 279.

Plaintiff did not show for an appointment on January 21, 2004.  AR 277.

Plaintiff saw PA Kosel on January 22, 2004, for a diabetes check.  Plaintiff had been tracking his blood sugars and PA Kosel opined that Plaintiff was improving control of his diabetes mellitus.  AR 276.

On February 12, 2004, PA Kosel opined that Plaintiff was improving control of his diabetes mellitus.  He had been checking his blood sugars twice per day and using insulin while waiting for Glucophage and Avandia to come through the Patient Assistance Program.  AR 274.

On March 16, 2004, Plaintiff saw PA Kosel for diabetes consultation.  PA Kosel diagnosed Plaintiff with type 2 diabetes mellitus with early neuropathy and stage 1 hypertension.  AR 272.

Plaintiff did not show up for appointments on April 16, 2004, April 28, 2004, and May 4, 2004.  AR 266, 269, 270.

On May 19, 2004, Plaintiff saw PA Kosel for a diabetes consultation.  Plaintiff had not been checking his blood sugars because he went to Mexico for a family emergency.  PA Kosel diagnosed him with diabetes mellitus, hyperlipidemia and elevated hypertension.  PA Kosel referred Plaintiff to a nutritionist and directed him to check blood sugars before breakfast or dinner alternating days.  AR 268.

Plaintiff did not show up for an appointment on June 3, 2004.  AR 265, 266.

Plaintiff saw PA Kosel for a diabetes check on June 15, 2004.  Plaintiff reported checking his blood sugar 2 times a day.  PA Kosel opined that Plaintiff had good control of his diabetes mellitus.  PA Kosel discussed diet control, exercise, foot care and compliance issues and emphasized aerobic activities, lifestyle change management, daily foot care and avoiding smoking and alcohol.  AR 264.

On July 10, 2004, PA Kosel indicated that Plaintiff had fair control of his diabetes mellitus.  He was to continue taking his blood sugar once a day.  AR 262.

On August 30, 2004, PA Kosel reported that Plaintiff had good control of his diabetes mellitus and his hyperlipidemia and hypertension were controlled with medications.  AR 258.  Plaintiff indicated that he checked his blood sugars, but did not bring in his readings.  AR 258.

On December 15, 2004, Plaintiff reported being out of Glucophage for three weeks while on a trip to Mexico.  He also had not been checking his blood sugar.  AR 256.  PA Kosel assessed Plaintiff with diabetes mellitus type 2, under good control, along with hyperlipidemia and hypertension both controlled with medications.  AR 256.

On March 15, 2005, PA Kosel reported that Plaintiff "does not currently check his blood sugar."  AR 253.

Plaintiff did not show up for an appointment on May 26, 2005.  AR 251.

1       On June 15, 2005, PA Kosel reported that Plaintiff had a period of time where he was not

2  taking any of his "medications correctly including now."  AR 249.

3       Plaintiff did not show up for appointments on August 5 and August 22, 2005, for diabetic

4  checks.  AR 246.

5       On January 15, 2005, Plaintiff cancelled his appointment.  AR 244.

6       On November 30, 2005, Plaintiff saw Sandra Santana, PsyD, for bereavement.  Plaintiff

7  reported that his father died the previous Saturday of cancer and since that time he had

8  experienced poor sleep, nervousness and sadness.  AR 241.  His mood was depressed and his

9  affect flat.  AR 241.

10      On January 18, 2006, Plaintiff complained of a history of cough.  Plaintiff also had a

11  history of diabetes mellitus.  AR 238.  PA Kosel indicated that Plaintiff "does not check his

12  blood sugar."  AR 238.

13      Plaintiff did not show for appointments on February 8, 2006, and on April 19, 2006.  AR

14  236.

15      On May 4, 2006, Plaintiff reported improved blood sugar.  He did not have any other

16  problems.  AR 235.

17      Plaintiff did not show for an appointment on August 24, 2006.  AR 230.

18      On October 5, 2006, PA Kosel noted that Plaintiff had been complaining of insomnia for

19  the past year, starting after his father died.  Plaintiff reported taking Vicodin to help him sleep.

20  PA Kosel assessed Plaintiff with insomnia and referred him to a behavioral consultant for

21  treatment.  AR 221.

22      On October 12, 2006, PA Kosel opined that Plaintiff had "poor control" of his diabetes

23  mellitus.  Plaintiff had elevated levels of Hemoglobin and Albumin/creatinine ratio, but had been

24  out of his Avandia for about a month.  PA Kosel educated Plaintiff regarding insulin

25  administration.  AR 215.  Plaintiff's blood glucose tested at 391.  AR 216.

26      On January 23, 2007, Plaintiff reported not currently having any medical problems, but

27  needed medication refills.  PA Kosel diagnosed Plaintiff with stage I hypertension and diabetes

28  mellitus.  AR 189.

1    On February 10, 2007, Emanuel Dozier, M.D., completed a consultative internal

2  medicine evaluation of Plaintiff with the assistance of an interpreter.  AR 201-04.  On physical

3  examination, Plaintiff ambulated down the hall and showed no signs of pain, ataxia or shortness

4  of breath.  He walked with a normal steppage gait.  AR 202.  His back had normal muscle bulk

5  and tone and had no trigger points or paravertebral spasm.  AR 203.  He had diminished pinprick

6  and light touch at the L5-S1 distribution.  AR 204.  He had motor strength of 5/5 in his upper and

7  lower extremities and grip strength of 5/5 bilaterally.  AR 204.  Dr. Dozier assessed Plaintiff with

8  Type 2 diabetes with diabetic neuropathy and mild uncontrolled essential hypertension.  AR 204.

9  Dr. Dozier opined that Plaintiff had no postural, manipulative or special sense restrictions, but

10  had environmental restrictions for work on inclined planes or uneven terrain, scaffolds and

11  overhangs.  AR 204.  Plaintiff could lift and carry 50 pounds occasionally and 25 pounds

12  frequently.  He also could stand, walk and sit for six hours.  AR 204.

13    On March 6, 2007, I. Ocrant, a state agency medical consultant, completed a Physical

14  Residual Functional Capacity Assessment form.  AR 195-99.  The medical consultant opined that

15  Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or

16  walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and

17  could push and/or pull without limitation.  AR 196.  Plaintiff frequently could climb, stoop,

18  kneel, crouch and crawl.  He occasionally could balance and stoop.  He did not have

19  manipulative, visual, communicative or environmental limitations.  AR 197-98.

20    On March 19, 2007, Plaintiff was diagnosed with hypertension stage 1 off of his Lotrel

21  medication.  He also had uncontrolled diabetes mellitus with blood sugar around 200.  PA Kosel

22  reportedly gave Plaintiff a work restriction note and opined that Plaintiff was "unable to lift

23  greater than 30 pounds."  AR 183.

24    On March 22, 2007, Plaintiff did not show for an appointment.  AR 181.

25    On May 9, 2007, S. V. Reddy, a state agency medical consultant, concurred with Dr.

26  Ocrant's residual functional capacity assessment.  AR 190-91.

27    On July 28, 2007, Plaintiff complained of "a lot of pain in his lower back" and pain in his

28  knees all the time.  Plaintiff did not have insurance to continue physical therapy.  His knees were

not swollen.  Christopher Kolker, M.D., of the Family Healthcare Network, characterized the examination as "fairly benign" and assessed Plaintiff with diabetes mellitus, osteoarthritis of bilateral knees, hypertension and hyperlipidemia.  AR 178.

On September 1, 2007, Dr. Kolker opined that Plaintiff had some peripheral neuropathy, along with pain and blood pressure concerns.  Plaintiff reportedly felt "OK" and his exam was "[f]airly benign."  AR 173.  Plaintiff had a glucose level of 188.  AR 172.  Lab results showed a glucose level of 219.  AR 169.

An undated foot screening form indicated that Plaintiff had foot or ankle muscle weakness and loss of feeling in his feet.  AR 168.

A lumbar spine x-ray taken on September 21, 2007, revealed a moderate degree of degenerative change and spur formation.  Narin Siribhadra, M.D., of Family Healthcare Network, opined that Plaintiff had degenerative arthritis of the lumbar spine.  X-rays of both knees were normal.  AR 165.

On October 9, 2007, Plaintiff told Dr. Kolker that he wanted disability.  AR 160.  Dr. Kolker thought Plaintiff had run out of state disability and wanted federal.  Dr. Kolker noted that they would try to send Plaintiff to a social worker to "get that going."  AR 160.  Plaintiff also would be sent to a nutritionist because of hypoglycemic episodes and "highs and lows."  AR 160. His blood glucose was 235.  AR 160, 161.  Plaintiff's physical examination was "[f]airly benign."  AR 160.  Dr. Kolker decreased Plaintiff's insulin and prescribed Lidocaine patches and Vicodin refills.  AR 160.

Plaintiff missed an appointment for lab results on November 16, 2007.  AR 159.

On December 24, 2007, Dr. Kolker diagnosed Plaintiff with postprandial hypoglycemia and diabetes mellitus.  Dr. Kolker indicated that Plaintiff needed to be put on a diet and opined that because of frequent episodes of hypoglycemia they could not give more and more insulin. AR 156.

On January 9, 2008, Plaintiff did not show up for a digital retinopathy exam.  AR 155. He also did not show up for an appointment on January 17, 2008.  AR 154.

On January 29, 2008, Plaintiff complained that when his sugar went up he had dry mouth and when it went down he felt cold all over his body.  AR 153.  Plaintiff was unable to purchase his syringes and stomach medications.  AR 152.

On March 4, 2008, Dr. Kolker completed a Residual Functional Capacity Questionnaire form.  Dr. Kolker noted that he first saw Plaintiff in January 2004 and he had seen Plaintiff every 30 days for approximately 60 total visits.  AR 144.  Dr. Kolker diagnosed Plaintiff with carpal tunnel syndrome, mild osteoarthritis, lower back pain and hypertension.  Plaintiff's symptoms included pain in the right wrist and in both knees.  AR 144.  Dr. Kolker indicated that Plaintiff's impairments were not reasonably consistent with Plaintiff's symptoms and functional limitations.  Dr. Kolker explained that Plaintiff seemed to have a lot of pain that he could not identify without further evaluation.  AR 145.

Dr. Kolker further opined that Plaintiff's pain, fatigue and other symptoms were rarely severe enough to interfere with attention and concentration needed to perform simple work tasks.  Plaintiff could maintain attention and concentration for one hour at a time.  AR 145.  He could tolerate moderate stress.  He could walk one city block without rest or severe pain, he could sit for more than 2 hours before needing to get up and could stand for 1 hour before needing to sit down or walk around.  He could sit at least 6 hours and stand about 2 hours in an 8-hour working day.  AR 146.  Plaintiff could lift up to 20 pounds frequently and 50 pounds rarely.  He frequently could look down, turn his head right or left, look up and hold his head in a static position.  He frequently could twist, occasionally could stoop, bend, crouch and climb stairs, and rarely could climb ladders.  AR 147.  Plaintiff could grasp, turn and twist an object with his right hand for 30% of an 8-hour workday and could use his right fingers for fine manipulations for 50% of an 8-hour workday.  AR 148.  Dr. Kolker estimated that Plaintiff would be absent about three days per month as a result of his impairments.  AR 148.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of diabetes mellitus with neuropathy and hypertension.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with occasional balancing and

1    climbing ladders, ropes and scaffolds.  Therefore, Plaintiff could perform his past relevant work

2    as a farm laborer.  AR 18-21.

3                                      **SCOPE OF REVIEW**

4               Congress has provided a limited scope of judicial review of the Commissioner's decision

5    to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6    the Court must determine whether the decision of the Commissioner is supported by substantial

7    evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

8    *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

9    *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

11   401.  The record as a whole must be considered, weighing both the evidence that supports and

12   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

13   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

14   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

15   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

16   Commissioner applied the proper legal standards, and if the Commissioner's findings are

17   supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d

18   509, 510 (9th Cir. 1987).

19                                          **REVIEW**

20              In order to qualify for benefits, a claimant must establish that he is unable to engage in

21   substantial gainful activity due to a medically determinable physical or mental impairment which

22   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

23   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

24   such severity that he is not only unable to do his previous work, but cannot, considering his age,

25   education, and work experience, engage in any other kind of substantial gainful work which

26   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

28   Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2    regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

3    C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g).  Applying this process in this case, the ALJ found

4    that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his

5    disability; (2) has an impairment or a combination of impairments that is considered "severe"

6    (diabetes mellitus with neuropathy and hypertension) based on the requirements in the

7    Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of

8    impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P,

9    Regulations No. 4; but (4) can perform his past relevant work as a farm laborer.  AR 18-21.

10    Here, Plaintiff argues that (1) the ALJ erred by failing to adopt the opinion of his treating

11    physician, Dr. Kolker; (2) the ALJ erred by failing to find that Plaintiff has the severe impairment

12    of degenerative arthritis; and (3) the ALJ erred in finding him not credible.

13                                    **DISCUSSION**

14    A.    Treating Physician-Dr. Kolker

15            Plaintiff first contends that the ALJ erred by failing to adopt the opinion of his treating

16    physician, Dr. Kolker.  The opinions of treating doctors should be given more weight than the

17    opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th

18    Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating doctor's

19    opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing"

20    reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the

21    treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion

22    without providing "specific and legitimate reasons" supported by substantial evidence in the

23    record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by

24    setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

25    his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th

26    Cir. 1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

27    interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849

28    F.2d 418, 421-22 (9th Cir. 1988).  Therefore, a treating physician's opinion must be given

1   controlling weight if it is well-supported and not inconsistent with the other substantial evidence

2   in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n. 10 (9th Cir. 2007).

3          Here, the ALJ afforded greater weight to the opinions of the consultative examiner, Dr.

4   Dozier, and the state agency medical consultants, which contradicted the opinion of Plaintiff's

5   treating physician, Dr. Kolker.  AR 21.  As noted, if a treating doctor's opinion is contradicted by

6   another doctor, the ALJ must provide "specific and legitimate reasons" supported by substantial

7   evidence in the record to reject the treating doctor's opinion.  *Lester*, 81 F.3d at 830.

8          In this case, the ALJ provided specific and legitimate reasons for rejecting Dr. Kolker's

9   opinion that are supported by the entire record.  The ALJ first gave "little weight" to Dr. Kolker's

10  medical opinion regarding Plaintiff's functional limitations because it was "not consistent with

11  the treatment records."  AR 21.  An ALJ may reject a treating physician's opinion that is

12  inconsistent with the physician's own treating records.  *See, e.g.,* *Tommasetti v. Astrue*, 533 F.3d

13  1035, 1041 (9th Cir. 2008) (incongruity between treating physician's questionnaire responses and

14  the medical records provides a specific and legitimate reason for rejecting treating physician's

15  conclusion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ permitted to reject

16  treating physician opinion that contradicts physician's clinical notes); *Magallanes*, 881 F.2d at

17  751 (brief and conclusionary form opinion which lacks supporting clinical findings is a

18  legitimate reason to reject a treating physician's conclusion).  As noted by the ALJ, the treatment

19  records reflect that Plaintiff was routinely seen for medication management, but he had a history

20  of medication noncompliance and repeated appointment no-shows.  Plaintiff's chief complaints

21  and diagnoses throughout the medical record related primarily to his diabetes and hypertension.

22  There are only two medical records noting that Plaintiff complained of any pain and Dr. Kolker

23  routinely described Plaintiff's physical examinations as fairly benign, including those visits in

24  which Plaintiff complained of pain.  AR 173, 160, 173, 178.  No functional limitations were

25  ascribed to Plaintiff on those occasions.  Further, treatment records reflect only one functional

26  limitation, which was assessed by PA Kosel and not Dr. Kolker, regarding Plaintiff's ability to

27  lift.  AR 183.  Further, and as the ALJ noted, Dr. Kolker's diagnosis of carpal tunnel syndrome

28

1  was not identified in the treatment records and there were no supporting x-rays, nerve conduction

2  studies or EMG testing to confirm the diagnosis.  AR 19, 144.

3       The ALJ's second stated reason for assigning little weight to Dr. Kolker's opinion was

4  because it appeared to accommodate Plaintiff in receiving disability.  AR 21.  The ALJ cited

5  Plaintiff's "disability seeking behavior" and identified one of Dr. Kolker's treatment records.

6  AR 21.  In that record, dated October 9, 2007, Dr. Kolker reported that Plaintiff "wants

7  disability" and "[w]hat we will try to do is send him to a social worker and get that going."  AR

8  160.  The record does not identify any functional limitations and includes diagnoses only of

9  diabetes mellitus and hypoglycemia.  AR 160.  Nonetheless, approximately four months later, Dr.

10 Kolker completed the Residual Functional Capacity Questionnaire form for Plaintiff, diagnosing

11 Plaintiff with carpal tunnel syndrome, mild osteoarthritis, lower back pain and hypertension and

12 identifying multiple functional limitations.  AR 144-45.  That the ALJ inferred from these facts

13 that Dr. Kolker was attempting to accommodate Plaintiff in receiving disability is not error.  An

14 ALJ is entitled to draw inferences logically flowing from the evidence.  *See Sample v. Schweiker,*

15 *694 F.2d 639, 642 (9th Cir. 1982).*  The propriety of the ALJ's inference is bolstered by Dr.

16 Kolker's own admission that Plaintiff's impairments were not reasonably consistent with

17 Plaintiff's symptoms and functional limitations and Plaintiff seemed to have a lot of unidentified

18 pain.  AR 145.

19      The Court notes that Plaintiff has not challenged directly the ALJ's two stated reasons for

20 assigning little weight to Dr. Kolker's opinion.  Instead, Plaintiff asserts that the medical

21 evidence supports Dr. Kolker's residual functional capacity questionnaire, pointing only to an x-

22 ray taken on September 21, 2007, which showed a moderate degree of degenerative change and

23 spur formation throughout the lumbar spine.  AR 165.  Plaintiff argues that the consultative

24 examiner, Dr. Dozier, did not have the benefit of this x-ray during his February 2007

25 examination, and the x-ray supports the limitations identified by Dr. Kolker.

26      Plaintiff's argument is without merit.  Even with the benefit of the x-ray, Dr. Kolker only

27 diagnosed Plaintiff with "mild OA," while acknowledging lumbar spine pain.  AR 144.

28 However, as detailed above, Plaintiff complained to Dr. Kolker of pain only twice in the

1    treatment records, beginning in July 2007, but Dr. Kolker characterized Plaintiff's physical

2    examinations on those occasions as fairly benign.  AR 173, 178.  Dr. Kolker did not identify any

3    findings on examination of lumbar spine pain or degenerative arthritis despite Plaintiff's

4    complaints of pain.  Dr. Kolker also opined that Plaintiff's impairments were not "reasonably

5    consistent with the symptoms and functional limitations."  AR 145.  An x-ray showing

6    degenerative arthritis is insufficient as the mere diagnosis of an impairment is not sufficient to

7    sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

8            Further, the ALJ relied on Dr. Dozier's consultative examination, which included

9    independent range of motion testing of Plaintiff's lumbar spine and independent clinical findings.

10   AR 202-203.  In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and

11   expounded upon its position regarding the ALJ's acceptance of the opinion an examining

12   physician over that of a treating physician.  "When an examining physician relies on the same

13   clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions

14   of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632; *Murray v.*

15   *Heckler*, 722 F.2d 499, 501-502 (9th Cir. 1983).  "By contrast, when an examining physician

16   provides 'independent clinical findings that differ from the findings of the treating physicians,

17   such findings are 'substantial evidence.'"  *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845,

18   849 (9th Cir.1985).  Independent clinical findings can be either (1) diagnoses that differ from

19   those offered by another physician and that are supported by substantial evidence, *see Allen v.*

20   *Heckler*, 749 F.2d 577, 579 (9th Cir. 1985), or (2) findings based on objective medical tests that

21   the treating physician has not himself considered, *see Andrews v. Shalala*, 53 F.3d 1035, 1041

22   (9th Cir. 1995).  Dr. Dozier's findings are based on his independent objective medical tests and

23   findings, including testing of Plaintiff's range of motion (lumbar spine included), muscle

24   strength, and ability to sit and walk.  On examination, Plaintiff's back had normal muscle bulk

25   and tone, with no trigger points or paravertebral spasm.  AR 203.  Plaintiff also ambulated down

26   the hall with a normal steppage gait and showed no signs of pain.  AR 202.  He was able to sit

27   during the interview without discomfort and transfer on and off the examination table without

28   assistance.  AR 202.  There is no indication in the record that Plaintiff reported any pain, lumbar

1   spine or otherwise, to Dr. Dozier.  Accordingly, the ALJ could properly rely on Dr. Dozier's

2   opinion as it was based on independent findings.  *Tonapetyan v. Haler*, 242 F.3d 1144, 1149 (9th

3   Cir. 2001) (consultive examiner's opinion may constitute substantial evidence because it is based

4   on examiner's independent findings and observations).

5   B.   Severe Impairment

6          Plaintiff next argues that the ALJ erred in failing to find that he had a severe impairment

7   of degenerative arthritis at step two of the sequential evaluation process.  Step-two of the

8   evaluation process requires the ALJ to determine whether an impairment is severe or not severe.

9   20 C.F.R. §§ 404.1520, 416.920.  An impairment is "not severe" if it does not "significantly

10  limit" the ability to do basic work activities.  20 C.F.R. § § 404.1521(a), 416.921(a).

11         Here, the ALJ discussed the severity of Plaintiff's degenerative arthritis of the lumbar

12  spine at step two, but found it to be a slight impairment with a minimal effect on the claimant's

13  ability to work.  AR 18.  In reaching this determination, the ALJ noted that September 2007 x-ray

14  findings of the lumbar spine showed only a moderate degree of degenerative changes.  AR 19,

15  165.  The ALJ contrasted these findings with those of the consultative examination, which took

16  place only seven months before the x-ray.  The consultative examination revealed range of

17  motion testing of the cervical and lumbar spine within normal limits.  AR 19, 203.  Therefore,

18  the ALJ found insufficient evidence to show that Plaintiff's arthritis was severe.

19         Plaintiff reiterates his argument that the consultative examiner, Dr. Dozier, did not have

20  the benefit of reviewing the x-ray findings taken after the consultative examination.  Plaintiff

21  asserts that Dr. Kolker's limitation of Plaintiff to standing/walking to about 2 hours in an 8 hour

22  day and his opinion that Plaintiff would be absent from work about 3 days per month "support

23  the severe nature of the degenerative arthritis."  Plaintiff's Opening Brief, p. 9.  However, as

24  discussed above and as Plaintiff admits, his own treating physician, Dr. Kolker found Plaintiff's

25  diagnoses to include only mild OA (osteoarthritis).  AR 144.  Although Dr. Kolker identified

26  lumbar spine pain, treatment records show that Plaintiff rarely complained of such pain, physical

27  examinations were fairly benign and Plaintiff reported no other symptoms or limitations from his

28  arthritis.  AR 173, 178.  Even with the benefit of the lumbar spine x-ray, Dr. Kolker admitted

1   Plaintiff's impairments were not consistent with his symptoms and functional limitations and

2   Plaintiff had a lot of pain that could not be identified.  AR 145.  Substantial evidence supports

3   the ALJ's decision that Plaintiff's arthritis was not a severe impairment.

4   C.   Plaintiff's Credibility

5        Finally, Plaintiff argues that the ALJ rejected his subjective testimony without providing

6   clear and convincing reasons.

7        The ALJ is required to make specific findings assessing the credibility of plaintiff's

8   subjective complaints.  *Ceguerra v. Secretary*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is not

9   'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn,*

10  495 F.3d at 635 (citation omitted).  In rejecting the complainant's testimony, "the ALJ must

11  identify what testimony is not credible and what evidence undermines the claimant's

12  complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of*

13  *Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988)).*

14       Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the

15  severity of his pain and impairments is unreliable, the ALJ must make a credibility determination

16  with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

17  discredit claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  "The

18  ALJ may consider at least the following factors when weighing the claimant's credibility:

19  '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

20  between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

21  testimony from physicians and third parties concerning the nature, severity, and effect of the

22  symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,

23  792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the

24  record, we may not engage in second-guessing." *Id.*

25       Here, the ALJ first explained that Plaintiff's testimony was "very vague" on how he

26  supported himself through the years, if he sold fruit or why he was given a 30-pound work

27  restriction in 2007.  AR 21.  Plaintiff contends that this reason is not supported by the record and

28  is not significant.  Opening Brief, p. 10.  Plaintiff's contention is without merit.  An ALJ may

1  rely on ordinary techniques of credibility evaluation.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

2  Cir. 1996).  That a claimant is a "vague witness" is a valid credibility factor.  *See Tommasetti,*

3  *533 F.3d at 1040* (ALJ properly discounted credibility of claimant as "vague witness").  Further,

4  the record supports the ALJ's determinations regarding Plaintiff's work testimony.  Despite

5  testifying that he did not work in 2004 or in 2005, he also testified that he helped his dad selling

6  fruit in 1992 for seven or eight years, but quit doing so when his father passed away in 2005.  AR

7  28-30, 241.  Plaintiff also testified that he last worked in 2006 and did not work in March 2007,

8  despite a physician's assistant giving him a work restriction note in March 2007.  AR 29-30, 183.

9  At the hearing, Plaintiff did not recall why he was given the note.  AR 29-30.

10      Second, the ALJ pointed out that Plaintiff testified that the last time he took a trip to

11  Mexico was 8 or 9 years ago, but the record indicated that Plaintiff went to Mexico in May 2004

12  and in December 2004.  AR 21.  Plaintiff contends that this reason is not a significant

13  inconsistency to warrant an adverse credibility finding.  However, an ALJ may properly consider

14  inconsistencies in a claimant's testimony. *Thomas,* 278 F.3d at 958.  Further, the record supports

15  the ALJ's determination regarding Plaintiff's travel to Mexico.  Plaintiff testified that he last

16  went to Mexico eight or nine years before the hearing, but treatment records show that Plaintiff

17  traveled to Mexico in May 2004 for a family emergency and in or around December 2004 for

18  three weeks.  AR 35, 256, 268.  In addition to the inconsistency, the ALJ also could infer from

19  Plaintiff's travel that he was not as physically limited as he contended.  *See, e.g., Tommasetti,*

20  *533 F.3d at 1040* (fact that a claimant traveled internationally for an extended time to care for an

21  ailing sister supported inference that the claimant was not as physically limited as he purported to

22  be).

23      Third, the ALJ pointed to Plaintiff's testimony that he could only understand a little

24  English, but at the hearing "more than half of the time he would start to answer before the

25  question was translated."  AR 21.  Plaintiff first argues that this does not mean that he is not

26  credible.  However, an ALJ may properly consider inconsistencies in a claimant's testimony and

27  conduct when assessing credibility. *Thomas*, 238 F.3d at 958.

28

1    Plaintiff next argues that the ALJ is exaggerating because the transcript does not show

2  that he answered the questions more than half the time before the question was translated.

3  Plaintiff's Opening Brief, p. 11.  An ALJ's own observations at the hearing are relevant to

4  assessing credibility.  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly

5  discounted testimony of excess pain and fatigue based on observations at the hearing and

6  instances of inconsistent testimony or behavior; ALJ may rely on observations at hearing); *see*

7  *also, Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the

8  hearing, along with other factors, supported finding that claimant's subjective complaints of

9  severe pain were not credible).  Here, the written transcript reflects that the ALJ twice cautioned

10  Plaintiff to wait until the translator interpreted the question before answering.  AR 27, 32.  The

11  transcript does not reflect either the translator's interpretation of questions or the timing of any of

12  Plaintiff's answers.  Even if the ALJ overstated the percentage of time that Plaintiff began

13  answering a question before it was translated, however, the ALJ has provided other sufficient

14  reasons for discounting Plaintiff's credibility. *See Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th

15  Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in

16  error).

17    Fourth, the ALJ indicated that Plaintiff showed poor credibility because he presented

18  himself "as being much worse than that which is contained in record" and "has displayed

19  disability seeking behavior."  AR 21.  In his opening brief, Plaintiff has not challenged the ALJ's

20  determination regarding disability seeking behavior.  The record reflects that Plaintiff told his

21  treating physician that he wanted disability and yet the treating physician opined that Plaintiff's

22  impairments were not reasonably consistent with his functional limitations and symptoms.  AR

23  130, 145.  The ALJ may use "ordinary techniques" in addressing credibility and may make

24  inferences "logically flowing from the evidence."  *Smolen*, 80 F.3d at 1284; *Sample*, 694 F.2d at

25  642.

26    Fifth, the ALJ found that Plaintiff's treatments was not the "kind ...one would expect

27  from a totally disabled individual" because the treatment records showed the Plaintiff was

28  routinely seen for medication management.  AR 21.  Evidence of "conservative treatment" is

sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). Plaintiff has not contested this credibility factor. Further, the medical records demonstrate that Plaintiff primarily received diabetes checks and medication management during his treatment at Family Healthcare Network. AR 189, 215, 235, 246, 249, 253, 256, 258, 262, 264, 268, 272, 276.

Finally, the ALJ discounted Plaintiff's testimony because Plaintiff had a history of noncompliance with medications and several appointment no shows. A claimant's failure to seek or follow prescribed treatment is a proper basis for finding his allegations of disabling pain and other symptoms not credible. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Again, Plaintiff has not contested this credibility factor. The ALJ's determination is supported by the record, which demonstrates repeated appointment no shows and noncompliance with medications and blood sugar testing. AR 154, 155, 181, 183, 215, 230, 236, 238, 244, 246, 249, 251, 253, 256, 265, 266, 268, 269, 270, 277.

Based on the above, the ALJ has provided specific, cogent reasons for discounting Plaintiff's credibility, several of which were not challenged by Plaintiff.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Armando Torres Mendez.

IT IS SO ORDERED.

**Dated:   September 16, 2009**                    **/s/ Dennis L. Beck**
                                                   UNITED STATES MAGISTRATE JUDGE